SLIGO IRON STORE COMPANY *v.* GUIST.

Opinion delivered April 29, 1912.

1. MASTER AND SERVANT—DUTY TO FURNISH SAFE MACHINERY.—A master is not only required to exercise ordinary care to provide the servant with reasonably safe instruments and tools with which to work, but he must also warn the servant of any increased danger caused by a

change in such instruments or tools of which the servant is ignorant; and a neglect to notify the servant will render the master liable where such change increases the hazard and is the proximate cause of an injury.  (Page 624.)

2.  SAME—INJURY . TO SERVANT—PROXIMATE CAUSE.—Where a metal covering over a rip-saw was removed without the servant's knowledge, and he, without negligence, was injured by coming in contact with the saw while engaged in his work, the failure of the master to notify him of such removal was the proximate cause of his injury. (Page 625.)

3.  SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In an action for injuries to a servant while operating a rip-saw, evidence that the workmen at the plant were accustomed to wear their hats as plaintiff did while engaged in the same work, though his view of the saw was cut off by his hat when reaching below the feed table, was competent to show that plaintiff exercised reasonable care for his own safety.  (Page 626.)

4.  APPEAL AND ERROR—HARMLESS ERROR.—Where, in an action for injuries to a servant employed at a rip-saw, the undisputed evidence showed that the servant had not been notified of the removal of the covering of the saw below the feed table, and the servant testified that he did not know of its removal, the error, if any, in permitting third persons who had worked at the saw to testify that they had not been notified of the removal of the covering was not prejudicial. Page 626.)

5.  TRIAL—REFUSAL TO REPEAT INSTRUCTION.—It was not error to refuse an instruction substantially covered by instructions given. (Page 626.)

6.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Where there are two ways in which a duty may be performed by a servant, and the one selected proves more dangerous than the other, the servant is not guilty of contributory negligence as matter of law.  (Page 627.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*E. B. Wall* and *Read & McDonough,* for appellant.

1.  A negligent act can not be shown to be justified by custom or usage.  6 Thompson on Negl., § 7882.

2.  The witness Thomas does not show sufficient knowledge to testify as an expert.  His testimony as to the hood and its uses, etc., was inadmissible.  55 Ark. 65; 62 *Id.* 1; 2 Elliott on Ev., § 1096.

3. ' The evidence shows negligence on the part of plaintiff as matter of law.  63 Ark. 427; 76 *Id.* 10; 97 *Id.* 438.

4.  The injury was not the proximate result of any negligent or wrongful act of the company.  91 Ark. 260.

5.  The physical facts preclude a recovery.  79 Ark. 608.  Plaintiff was familiar with the working of the machine

and appellant owed him no further duty.   71 Ark. 518; 73 *Id.* 49.

6.   It is error to refuse proper instructions (96 Ark. 206) and to ignore the issues made by such.   93 Ark. 504; 92 *Id.* 554; 25 *Id.* 243; 80 *Id.* 166; *Ib.* 457.

7.   Abstract instructions should be refused.   96 Ark. 614.

*Walker & Walker,* for appellee.

1.   There is no error in the instructions; they correctly state the law.   59 Ark. 317; 95 *Id.* 275; 101 Ark. 197.

2.   Where proof of both parties is directed to a given point at issue, the pleadings will be treated as amended to conform to the proof.   65 Ark. 422; 67 *Id.* 426; 64 *Id.* 450.

3.   Evidence that the person charged with negligence followed the custom of others in the same line of work will be received on the question whether he acted as a reasonably careful man would have acted under the circumstances of the particular case, etc.   6 Thompson on Negl., § 7882.

4.   No question was asked involving the opinion of an expert.   The witnesses testified to facts.   55 Ark. 65.

5.   Any error committed by asking improper questions was cured by the withdrawal of the questions and answers from the jury and the admonition of the court.   74 Ark. 256; 93 *Id.* 443; 94 *Id.* 548.   102 Ark. 393.

FRAUENTHAL, J.   This is an action instituted by R. E. Guist to recover damages for an injury which he alleged he received while in defendant's employ at a rip-saw.   The defendant is a corporation engaged in the manufacture of felloes, spokes, hounds and other wagon material, and uses at its plant a number of machines for this purpose.   One of these is a self-feeding rip-saw, consisting of a circular saw about fourteen inches in diameter set in a metal table about four feet wide and six feet long.   The saw was operated by means of a belt resting upon a cylinder and extending to other machinery to which the motive power was applied.   Attached to the machine were four cylinders of different sizes upon which the belt rested, and the speed of the feed of the saw was regulated by shifting the belt from one cylinder to the other.   The defendant at the time of the injury was engaged at work at this saw, and he alleged that, while he was shifting the belt

from a smaller cylinder to a larger one in order to increase the speed of the feed, his right hand came in contact with the saw, which severed two fingers and mangled his hand. The saw was fixed in a table so that about one-third of it extended above the face of the table, with the remainder beneath its surface. When the machine was originally installed, the portion of the saw beneath the top of the table was covered with a steel or metal hood, which entirely encased it, and this hood was removed some time before the injury. The negligence charged against the defendant consisted in removing this hood or covering without notifying plaintiff, and thus increasing the danger to which he was exposed. The defendant, in addition to denying any negligence upon its part, pleaded assumption of risk and contributory negligence upon the part of the plaintiff as a defense to his cause of action. The trial resulted in a verdict in favor of the plaintiff.

The defendant has assigned a number of errors which it urges were committed in the trial of the case; but the principal grounds upon which it seeks a reversal of the judgment are that the evidence is insufficient to sustain the verdict returned, and that the court erred in its rulings relative to the admission of certain testimony and to certain instructions.

The plaintiff had been in defendant's employment for some time, engaged in running a machine known as a shaper, and he had also been directed on several occasions to work at said rip-saw. The testimony does not definitely indicate when this rip-saw was installed at the plant, but it does appear that it had been in use there for probably a year or more prior to the date of the injury, which occurred on March 15, 1911. At the time of its installation, the lower portion was covered with a metal hood, and the testimony is conflicting as to the exact purpose for which the hood was placed thereon and as to the time when it was removed. The testimony on the part of the defendant tended to prove that the covering was used only in connection with a blow system by which the sawdust was removed, and that it was taken off because no blow system was in the plant. The testimony on the part of the plaintiff, however, tended to prove that the metal covering was also used for the purpose of protecting the operator at the saw. The plaintiff was in the defendant's employ at the time the

machine was installed, and saw the hood then attached to it, and saw it operated thereafter with that covering over the lower portion of the saw. He never saw this hood removed, and had no notice that it had been removed. He had worked with the saw on a number of different occasions, the last of which was about February 1, 1911, and during all these different occasions he testified that the hood was still covering the saw. In working at the saw, the operator stood at the west end of the table and passed the timber through the saw. The cylinders upon which the belt rested were located in the table and below the saw. There were four cylinders at the east end and four at the west end of the table. There was testimony introduced on the part of the defendant tending to prove that the belt was shifted from cylinder to cylinder by means of a stick when the machinery was in motion, and that it was shifted by hand after stopping the machinery, but in both ways by the operator while standing only at the west or east end of the table. The testimony on the part of the plaintiff, however, tended to prove that the belt was shifted while the machine was running, either with a stick or by the hand. His testimony tended further to prove that the defendant's foreman did shift this belt, while the machine was running, by going to the north side of the machine, and, after inserting the hand beneath the saw and the hood, by pulling the belt from one cylinder to the other; that he did this in the presence of the plaintiff and other workmen, and instructed the plaintiff to shift the belt from cylinder to cylinder in this manner. When the metal hood was over the lower portion of the saw, the hand could not come in contact with the saw, as it was inserted beneath the table in shifting the belt. On the occasion of the injury, the plaintiff had been directed by the defendant's foreman to work at this saw. While he was thus engaged, it became necessary to increase the speed of the feed to the saw. To do this, it was necessary to shift the belt from a small cylinder to a larger one. The defendant testified that he went to the north side of the machine and, kneeling on the floor with his shoulder beneath the saw, inserted his right hand and arm beneath the saw and grasped the belt with his fingers and pulled it from the small cylinder to the larger one while the machine was in motion. In doing so a lacing on the

belt struck or caught his thumb and threw his hand up and somewhat outward, causing it to come in contact with the saw. He testified that the hood was on the saw before the time of the injury, and that he did not know it had been removed until after he had received the injury. He stated that when he inserted his hand in the table from the north side he did not discover that the hood was off for the reason that there was a metal on the side of the machine which obscured his view of the saw; that he had gotten on his knees and his shoulder was below the saw; that a hat was on his head, and he was watching his hand, which was at a point about ten inches below the saw as he reached the belt, and, for this reason, the lower portion of the saw was not within the line of his vision, and he did not see that the hood was off of it.

It is insisted that there was not sufficient evidence to sustain the verdict, because the manner in which the plaintiff claimed the injury was received is contrary to the physical facts shown in the case. It is urged that the size and construction of the machine was such that the plaintiff's arm and hand was not long enough to extend from the north side of the table to the belt upon the cylinder, and could not come in contact with the saw because a bar extended across the table between his hand and the saw; and also that he could not have failed to have seen that the saw was uncovered. We are, however, of the opinion that there was some testimony from which the jury were warranted in finding that, as the plaintiff knelt upon the floor at the side of the table, the metal piece across it hid his view of the lower portion of the saw, and that, as he lowered his head to watch his hand as he inserted it below the saw in order to grasp the belt, the saw was not within the line of his vision. It then became a question for the jury to determine whether, under these facts and circumstances, the plaintiff was guilty of negligence in not seeing or observing that the hood was off the saw. Nor from the testimony can we say that it was impossible, as a physical fact, for the plaintiff to have reached the belt with his hand from the north side of the table, or that his hand could not come in contact wite the saw, as testified to by him. We are therefore of the opinion that there was some evidence sufficient to justify the

jury in finding that the injury could and did occur in the manner as testified to by the plaintiff.

It is contended that there was no evidence showing that the injury was due to any act of negligence done by defendant or any of its agents. It is urged that, according to the testimony, the saw with the hood removed from it was a reasonably safe machine, and that the full measure of defendant's duty was only to exercise ordinary care in furnishing to plaintiff a reasonably safe tool or machine with which to do the work in which he was engaged. It is argued that the plaintiff, in entering and continuing in the employment in which he was engaged, assumed all the ordinary risks and hazards thereof, and therefore that he assumed the hazards that were incident to running this machine, which was in a reasonably safe condition with the hood removed from the saw. But the act of negligence charged against the defendant in this case is not in its failure to furnish a reasonably safe machine with which to do the work, but in the failure to notify plaintiff of a new or increased danger incident thereto caused by a change made in the machine without notice to him and without his knowledge. It is not only the duty of the master to exercise ordinary care to provide the servant with reasonably safe instruments and tools with which to work; but it is also his duty to warn the servant of any increased danger caused by a change in such instruments or tools of which the servant is wholly ignorant. A neglect to notify the servant of such change will make the master guilty of actionable negligence if such change increases the hazard and is the proximate cause of a consequent injury. In 1 Labatt on Master and Servant, § 96, the law in this regard is thus well stated: "A servant may recover damages for such an injury caused by the removal or alteration of some essential part of a machine when the danger of using it is thereby materially increased. Hence, whatever doctrine may be entertained as to the existence of a duty on the part of the employer to keep dangerous machinery covered, the employer is *prima facie* liable for an injury resulting from entire or partial removal of a cover which had been provided. The conditions thus created are clearly more dangerous, because misleading, than those to which the servant is exposed when there has never been a cover at all. In such cases, there-

fore, the right to maintain the action is complete, and can only be defeated by showing that he understood and deliberately encountered the specific risk arising from the changed circum stances." In 1 Shearman & Redfield on Negligence (5 ed.), § 203, it is said: "It is also the personal duty of the master, so far as he can by the use of ordinary care, to avoid exposing his servants to extraordinary risk which they could not reasonably anticipate. * * * The master must, therefore, give warning to his servants of all perils to which they will be exposed of which he is or ought to be aware other than as they should, in the exercise of ordinary care, have foreseen as necessarily incidental to the business. * * * Such notice must be timely—that is, given in sufficient time to enable the servant to profit by it. It is, therefore, the duty of the master to give adequate and timely warning of changes in the situation involving new dangers." See also Wharton on Negligence, § 211; *Pullman's P. C. Co.* v. *Laack,* (Ill) 18 L. R. A. 215; *Cincinnati, N. O. & T. P. R. Co.* v. *Gray,* (C. C. A.) 50 L. R. A. 47; *Spelman* v. *Fisher Iron Co.,* 56 Barb. 151; *Mastin* v. *Levagood,* 47 Kan. 36; *Mullin* v. *Northern Mill Co.,* 53 Minn. 29.

In the case at bar, the saw had a metal covering over a portion of it which was beneath the surface of the table. The effect of this covering was that in reaching with the hand at such place one could and would not come in contact with the saw. The hood had been removed without notice given to the plaintiff and without his knowledge of this hazard caused by a change made in the machine. He was directed upon this occasion by the foreman to work at this machine, and he proceeded to do the work in the very manner in which he had been instructed. From the construction of the machine and the position he was required to assume in order to catch hold of the belt to shift it to another cylinder, the jury were warranted in finding that the view of the lower portion of the saw was obscured from his sight, and that, although in the exercise of ordinary care for his own safety, he did not discover that the covering was off of the saw. The failure to notify the plaintiff that a change had been made in the machinery which made the hazard in performing this duty was, we think, the proximate cause of the injury which plaintiff sustained, and

was an act of negligence sufficient to make defendant liable for the damages consequent therefrom.

It is urged that the court erred in permitting the introduction of certain testimony. One of these objections relates to testimony of the custom of the workmen at this plant in wearing their hats, as plaintiff did on the occasion of the injury. This testimony, we think, was perfectly competent for the purpose of showing that the plaintiff exercised that care for his own safety which a reasonably prudent person would exercise under like circumstances. 6 Thompson on Negligence, § 7882.

It is also urged that the court erred in permitting other persons who worked at the saw to testify that they had not been notified that the hood had been removed. We do not think, however, that this testimony, if erroneous, was prejudicial, for the reason that the uncontroverted evidence and the testimony of defendant's foreman himself shows that this foreman had not notified plaintiff that the hood had been removed.

Several assignments of error are pressed upon our attention, based upon the refusal of the court to give certain instructions requested by the defendant. These, however, we think, were in most instances substantially covered by instructions which were given. Instructions were asked by defendant which in effect told the jury that if plaintiff inserted his hand on the north side of the table in order to shift the belt when it was safer to use a stick to do this, then he could not recover. Other instructions were asked which in effect stated that if, without turning off the power, the plaintiff used his hand in shifting the belt while standing by the side of the table when, by the exercise of ordinary care he should have stood at the west end of the machine and used a stick, then he could not recover. We do not think that the court erred in refusing to give these instructions. The issue involved in this case was not whether the plaintiff was guilty of negligence in using his hand as he did in order to shift the belt, instead of using a stick, no matter where he was standing and no matter whether the machine was in motion or not. The undisputed evidence is that the plaintiff could not and would not in any event have received the injury if the metal covering which had encased the lower

portion of the saw had not been removed. The cause of the injury was the exposed condition of the saw, and the act of negligence of which defendant was guilty was the failure to notify plaintiff that the covering had been removed. The sole issues, therefore, involved in this case were whether or not the hood was placed over the saw in order to protect the operator and was removed without notice to plaintiff, and whether or not the plaintiff was guilty of negligence in failing to discover that it was off of the saw at the time of the injury. Upon these issues, the court gave, amongst others, the following instructions:

"3. I charge you that if the hood or hopper or drum was placed on the machine for the purpose solely to carry away the sawdust and not in any wise for a protection to the operator, the fact of taking the hood off and leaving it off would not of itself constitute negligence on part of the company."

"4. If the plaintiff in any manner caused or contributed to his own injury, he can not recover in this action."

"5. If you find the machine was being used without the hood, and if the plaintiff knew the hood was not on the machine or by the exercise of ordinary care could have known it, and operated it without objections, then he can not recover."

These instructions, in connection with other instructions given by the court, fully presented these issues involved in the case, and, we think, correctly stated the law that is applicable to this case.

The instruction requested by the defendant, in effect stating that the plaintiff could not recover if the shifting of the belt with the hand was less safe than with a stick, is not a correct statement of the law. This court has held that where there are two ways in which a duty may be performed by the servant, and the one selected proves less safe than the other, the servant can not be held guilty of contributory negligence as a matter of law. But the question involved in this case was not whether it was safer to shift the belt while the machine was in motion with a stick than by the hand, nor whether the plaintiff was guilty of negligence by inserting his hand from the north side of the table, instead of standing at the west end and either using a stick or first

throwing off the power before using his hand; for the reason that, under the facts and circumstances of this case, the proximate cause of his injury was the removal of the hood from the saw, without notice given to plaintiff and without his knowledge, and if the hood had covered the saw at the time, the plaintiff could not under any circumstances have been injured by inserting his hand from the side of the table.

The issues involved in this case having been presented to the jury under proper instructions, and, there being sufficient evidence to sustain the finding of the jury relative thereto, the judgment must be affirmed.